Dorothy L. MILTON, Eleanor S. Whelan, Appellants,

v.

Caspar W. WEINBERGER, Secretary of Defense et al.

No. 79–2151.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 21, 1980.

Decided March 4, 1981.

Frances B. Aubrey, Washington, D. C., for appellants.

Robert B. Amidon, Asst. U. S. Atty., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry, John R. Fisher and Diane M. Sullivan, Asst. U. S. Attys., Washington, D. C., were on brief, for appellees.

Before McGOWAN, Chief Judge, and EDWARDS and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

EDWARDS, Circuit Judge:

In this case appellants Milton and Whelan seek review of a judgment of the District Court denying their claims for relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16 (1976), on charges of unlawful sex discrimination with respect to job promotions. After a full trial on the merits, the District Court found that appellants' claims were "time-barred" as to four of the six job vacancies at issue, because those claims had not been filed until after the applicable limitation period had run. The District Court also rejected the claims of discrimination regarding the two remaining job vacancies, both of which involved timely complaints, finding that the appellees had "met their burden . . . of establishing that neither plaintiff would have been selected for the two vacancies even in the absence of sex discrimination."

For the reasons set forth below, we affirm the judgment of the District Court with respect to the four claims found to be time-barred and with respect to one of the two other claims. However, as to the sixth claim, which was timely filed, we reverse

the trial court's decision, holding that the reason identified by the court for not promoting the appellants was not a legitimate non-discriminatory reason. Consequently, we remand the case to the District Court for a determination as to whether a legitimate reason exists on the present record, and, if not, to frame appropriate relief.

## I. BACKGROUND

Appellants Dorothy Milton and Eleanor Whelan were employed at the Cameron Station of the Defense Logistics Agency (DLA) of the Department of Defense in 1967. By 1971 each woman held the position of Equal Employment Opportunity Officer at grade GS–13. Between 1972 and 1977 each woman applied for several promotions to GS–14 positions. Although in each instance both women were found qualified for the sought-after promotion, on every occasion a man was selected for the job.[1] Consequently, neither appellant has been promoted since 1971.[2]

The selection procedure for awarding promotions in the DLA consisted of two steps. As the trial court explained, qualified applicants were

> rated according to their formal credentials and their proficiency in job-related

functions. Subsequently, the top-rated applicants were identified and then interviewed by the selecting official for ultimate selection. This official would have had nothing to do with either the initial ratings of the applicants or the selection of the top group of three to eight applicants from which he was required to make a selection.

Memorandum Opinion, *reprinted in* J.A. at 17a.

The appellants alleged six specific acts of discrimination. The first four took place between 1972 and February 1975, during which period each appellant applied and was found "qualified" for four promotions within the Defense Logistics Agency.[3] For each opening, Whelan was among the top-rated applicants interviewed by the selecting official; Milton was interviewed for only one of the four positions.[4] Although neither of the appellants, nor any female applicant, was ultimately awarded any of these positions,[5] neither appellant filed an informal complaint of discrimination within thirty days following the selection of a male applicant for each position.[6]

In August 1975, Milton sought advancement for the fifth time, applying for a

---

1. The trial court found that "[d]uring the period 1973–1977 all GS–14 positions at Cameron Station were held by males, although by 1976 sixty percent of the employees in grade GS–13 were female." Memorandum Opinion (filed Apr. 26, 1979), *reprinted in* Joint Appendix ("J.A.") at 15a.

2. Milton's unit was later transferred to the Department of Labor, where she presently works. Whelan no longer works for the Government.

3. Each new position was for a GS–14 Equal Employment Opportunity Officer. The four positions were designated Job Opportunity Announcement ("JOA") 187, 139, 298, and 70, respectively.

4. The selecting official interviewed three candidates for JOA 187, 14 candidates for JOA 139, nine candidates for JOA 298, and eight candidates for JOA 70.

5. Whelan was originally chosen for JOA 298, but the Deputy Director of the agency, General Simon, did not approve of the selection, apparently because he believed that she had been chosen on the basis of her sex. The position

was later filled by a male, who had been laterally transferred and was thus not in the original group of applicants. For one year, until the position was finally filled through the lateral transfer, Whelan and other GS–13 employees performed the duties of the job on a rotational basis. *See* note 11, *infra.*

6. The time period for filing the complaint is significant because of a Title VII regulatory provision, 5 C.F.R. § 713.214(a)(1)(i) (1977) (*redesignated* as 29 C.F.R. § 1613.214(a)(1)(i) (1979)), which provides that:

> The agency may accept the complaint for processing in accordance with this subpart only if—
> (i) The complainant brought to the attention of the Equal Employment Opportunity Counselor the matter causing him to believe he had been discriminated against within 30 calendar days of the date of that matter, or, if a personnel action, within 30 calendar days of its effective date.

The appellants do not challenge the validity of this regulation.

promotion advertised as JOA 275. She was rated within the top five applicants,[7] and interviewed by the selecting official. Whelan did not apply for JOA 275; she felt that her application would be futile since General Simon, who had disapproved her selection for JOA 298, *see* note 5, *supra*, still had responsibility for approving promotions. A male applicant was chosen to fill JOA 275.

Following the rejection of Milton's application for JOA 275, Milton and Whelan filed with the DLA an informal complaint of sex discrimination. In an attempt to resolve the dispute, the DLA proposed to give them each a "priority consideration letter." After accepting this resolution of their complaint,[8] the appellants applied for JOA 22. Although each was found qualified, neither rated high enough to be placed on the final list of applicants to be interviewed. After a male was selected for the position, Milton and Whelan filed another charge of sex discrimination with the DLA.

## II. THE DECISION OF THE DISTRICT COURT

The appellants' case was fully tried without a jury.[9] In its Memorandum Opinion the District Court found that the appellants had "presented at trial a prima facie case creating an inference of sex discrimination," Memorandum Opinion, *reprinted in* J.A. at 14a, and concluded, among other things, that the appellants "have each been fully qualified by length of service and out-

standing performance to be promoted to GS–14." *Id.* at 15a. Calling attention to "the fact that a substantial number of women have consistently been employed at the GS–13 level in the headquarters or field offices of DLA, [but that] no woman has ever been selected in these locations for promotion to GS–14," *id.*, the court characterized the appellants as presenting an "extremely strong prima facie showing." *Id.*

Following *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978), the court concluded that the burden had shifted to the appellees to demonstrate "that all the allegedly illegal employment decisions were based on legitimate nondiscriminatory considerations." Memorandum Opinion, *reprinted in* J.A. at 15a. The court noted that, since "[n]o claim for injunctive relief . . . is advanced," the Government "relies primarily on the proposition that, regardless of whether or not the defendants could be found to have discriminated on the basis of sex, plaintiffs are not entitled to the relief they request." *Id.* Accepting this proposition, the District Court embraced the standard announced in *Day v. Matthews*, 530 F.2d 1083 (D.C. Cir. 1976), requiring "clear and convincing evidence that, even absent the alleged discrimination, neither plaintiff would have been selected for the jobs under review." Memorandum Opinion, *reprinted in* J.A. at 15.

In considering the specific vacancies at issue, the District Court found that it need

---

7. She ranked fifth among the top five candidates.

8. The significance of the priority consideration letter is clouded in the record. The appellants testified that an Equal Employment Opportunity Officer explained to them that the letter entitled them to "priority consideration" in the next promotion. This explanation apparently meant that the final list of candidates, the group to be interviewed by the selecting official, would be expanded to include the appellants if necessary. The Government presented evidence that the EEO Officer had no authority to issue such a letter, and that because of a preexisting collective bargaining agreement, the list of candidates could not be expanded. The District Court concluded that the letter was "highly ambiguous," creating "considerable misunderstanding," and that it was reasonable for DLA officials to believe that "the as-

surances given could not override the rules governing merit promotions or serve as a way to abrogate the normal selection procedure should plaintiffs fail even to qualify for the top group from which the selection was to be made." Memorandum Opinion, *reprinted in* J.A. at 20a. If the District Court's characterization of the letter is correct, it is unclear what value, if any, the letter had.

9. The appellants filed the charge of sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17 (1976). Whelan also filed a complaint alleging unlawful age discrimination under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 (1976 & Supp. II 1978). The age discrimination claim, which the trial court dismissed, is not an issue on appeal.

not consider any of the appellants' claims associated with the first four job openings—JOA 187, 139, 298, and 70—since in those instances the appellants had failed to file a timely complaint of sex discrimination, as required by 5 C.F.R. § 713.-214(a)(1)(i) (1977) (*redesignated as* 29 C.F.R. § 1613.214(a)(1)(i) (1979)). *See* note 6, *supra*. Quoting *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977), the trial court observed that "[a] discriminatory act which is not made the basis for a timely charge . . . is merely an unfortunate event in history which has no present legal consequences." Memorandum Opinion, *reprinted in* J.A. at 16a.

Turning to one of the remaining two claims, the trial court determined that the appellees had given a sufficient reason for the appellants' rejections in JOA 275. Since Milton rated below the candidate chosen, and Whelan, had she even applied, "would in all likelihood have been rated below the selectee," Memorandum Opinion, *reprinted in* J.A. at 17a, the District Court found that the evidence was "clear and convincing" that neither appellant was the best qualified for the promotion.[10] In other words, the District Court found that the appellants legitimately could be rejected because they did not rank, in the first stage of the selection process, as high as the applicant ultimately selected, even though they had ranked in the top group of applicants to be interviewed. Consequently, the court concluded that the appellees had met their burden under *Furnco* and *Day*.

Finally, the court reasoned that the last claim, involving JOA 22, should be rejected because neither applicant had rated high enough to place in the group of candidates selected for interviews. Because the appellants did not challenge the rating system, and because the priority consideration letter could not "abrogate the normal selection procedure should plaintiffs fail even to qualify for the top group from which the selection was to be made," Memorandum Opinion, *reprinted in* J.A. at 20a, the trial court concluded that, "neither plaintiff would have been selected for [JOA 22] even in the absence of sex discrimination." *Id.* at 20a–21a.[11]

## III. TIME–BARRED CLAIMS

In seeking review of the District Court's decision, the appellants first argue that the trial judge erred in ruling that their claims regarding the first four promotions—JOA 187, 139, 298, and 70—were time-barred because they had not filed timely administrative complaints. The appellants do not dispute that their first informal administrative complaints were filed more than thirty days after a male had been selected for each of the job openings, and that such a late filing normally would bar their claims regarding those promotions.[12] Rather, the appellants contend that strict application of the time limits set forth in the Code of Federal Regulations is not appropriate since the appellees have engaged in a continuing course of discriminatory conduct, such that each denial of promotion "was not an isolated act but was part of an overall pattern and practice which was continuous in nature." Appellants' brief at 10.

The appellees argue that the continuing violation theory cannot be construed to allow all untimely claims. They principally

---

**10.** In reviewing the charge of discrimination with respect to JOA 275, the trial court, without issuing a finding on this point, treated Whelan as a "constructive applicant," following *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 362–71, 97 S.Ct. 1843, 1868–72, 52 L.Ed.2d 396 (1977). *See* section V, *infra*.

**11.** The trial court made two other significant findings. First, it concluded that the "cancellation of Ms. Whelan's selection [for JOA 298] would not have occurred had she been a male—she was fully qualified for the post in every conceivably relevant respect." *Id.* at 19a. Second, the District Court rejected as pretextual the appellees' "attempt[ ] to explain the repeated nonselection of plaintiffs on the ground that neither plaintiff has ever had field experience." *Id.* at 19a n. * *. We see no reason to disturb these findings.

**12.** *See* note 6, *supra*. Thus, the appellants do not challenge the validity of the regulation requiring a filing within 30 days.

rely on *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), for their conclusion that the appellants are now time-barred from pursuing claims associated with the earlier promotions. In *Evans* the plaintiff alleged that her employment had been terminated in violation of Title VII. However, she did not file an administrative complaint until several years later, when her employer rehired her but refused to give her seniority based on her service before her termination. In an attempt to skirt the statutory requirement to file an administrative complaint within a fixed time period after the allegedly discriminatory act (the termination), the plaintiff alleged that the violation was "continuing."

In holding for the defendant, the Court admonished that "the critical question is whether any present *violation* exists." *Id.* at 558, 97 S.Ct. at 1889 (emphasis in original). Even when the employment policies give present *effect* to a past act of discrimination, a "claim based on [the original] discriminatory act is ... barred." *Id.* at 555, 97 S.Ct. at 1887. While "[i]t may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, ... separately considered, [the prior act] is merely an unfortunate event in history which has no present legal consequences." *Id.* at 558, 97 S.Ct. at 1889.[13]

As two commentators have remarked, "[i]f any aspects of the continuing violation theory survive *Evans*, they would seem limited to a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the statutory period." Schlei & Grossman, Employment Discrimination Law 232 (Supp.1979).

The cases of this Circuit fundamentally follow this construction of the continuing violation theory.[14] In *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429 (D.C.Cir.1976), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978) (a pre-*Evans* case), for example, the court considered an employer's challenge to the District Court's grant of relief to employees who had not filed administrative charges, and who had been unlawfully fired more than ninety days (the filing period for these particular claims) before other plaintiffs filed administrative charges. Noting that "not all members of an employee class need file charges ... in order to share in a recovery of backpay," *id.* at 472, the court held that where the "viola-

---

**13.** In a more recent case, *Delaware State College v. Ricks*, —— U.S. ——, ——, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980), the Court reaffirmed that a theory of "continuing violation" is applicable only if a present violation exists:

> Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination. If [the plaintiff] intended to complain of a discriminatory discharge [instead of the earlier denial of tenure], he should have identified the alleged discriminatory acts that continued until, or occurred at the time of, the actual termination of his employment. But the complaint alleges no such facts.

(citation omitted).

**14.** The "continuing violation" theory finds express support from Congress. In the Conference Report to the Equal Employment Opportunity Act of 1972, Pub.L.No. 92–261, 86 Stat. 103 (1972) (amending Title VII), the conferees expressly approved of "[e]xisting case law which has determined that certain types of violations are continuing in nature, thereby measuring the running of the required time period from the *last* occurrence of the discrimination and not from the first occurrence."

Conference Report, *reprinted in* 118 Cong.Rec. 7166, 7167 (emphasis added). Thus, Congress has condoned the use of a "continuing violation" theory effectively to expand the charge filing periods in Title VII.

Although the Conference Report's discussion of "continuing violation" made explicit reference only to § 706, 42 U.S.C. 2000e–5 (the provision applicable to privately employed workers), and not § 717, 42 U.S.C. 2000e–16 (1976) (the provision for federal employees), we believe that the continuing violation theory is fully applicable to complaints filed pursuant to § 717. The "continuing violation" principle is a judicial creation designed to carry out the congressional intent of affording the most complete relief possible in Title VII cases. Surely, the reasons for permitting departure from the strict application of time limits for federal employees are not significantly different than the corresponding reasons concerning privately employed workers. *See Johnson v. Bergland*, 614 F.2d 415 (5th Cir. 1980) (assuming without discussion that the "continuing violation" theory applied to suits filed under § 717).

tions complained of were of a continuing nature ... the filing is timely as to all similarly situated employees regardless of when the first discriminatory incident occurred." *Id.* at 473. To be considered continuing in nature, however, the discrimination may not be "limited to isolated incidents but [must] pervade[ ] a series or pattern of events which continue to within" the filing period. *Id.* In *Laffey* the discharges were related to each other since they had resulted from the same employment policy of the defendant.

Similarly, in *Shehadeh v. Chesapeake & Potomac Tel. Co.*, 595 F.2d 711 (D.C.Cir. 1978), this court reversed the District Court's dismissal of an action brought by a woman who alleged that she had been discharged in violation of Title VII. She contended additionally that her former employer had continued to discriminate against her by disseminating untrue information about her to potential employers, thus preventing her from obtaining other employment. The court of appeals upheld her right to bring suit despite her failure to file her administrative complaint until nearly five years after her original discharge.

The *Shehadeh* court acknowledged that under *Evans*, a "complainant who is tardy ... in filing his [administrative] discrimination charge ... ordinarily will be denied a judicial audience." *Id.* at 717–18. "When, however, a continuing discriminatory employment practice is alleged, the administrative complaint may be timely filed notwithstanding that the conduct impugned is comprised in part of acts lying outside the charge-filing period." *Id.* at 724. The court believed that typical of "continuing violations" were allegations of unlawful hiring and promotion policies, or allegations of unfair bias permeating the employer's personnel practices. "[I]t is the ongoing program of discrimination, rather than any of its particular manifestations, that is the subject of attack." *Id.* at 724–25.

██ In *Shehadeh* the plaintiff alleged that her employer harbored a continuing, unlawful, and hostile bias against her. The charge "made plain that the specified event was illustrative of a long-lasting pattern of like events." *Id.* at 725. *See also Clark v. Olinkraft, Inc.*, 556 F.2d 1219, 1223 (5th Cir. 1977), *cert. denied*, 434 U.S. 1069, 98 S.Ct. 1251, 55 L.Ed.2d 772 (1978) (*Evans* was not applicable since the "allegations of the complaint [in *Clark*] and testimony in the deposition show that continuing discrimination is under attack. The appellant's action therefore is not time-barred.") The present case, however, sharply diverges from *Shehadeh* in that the appellants have neither alleged in their complaint nor argued at trial that the appellees' acts constituted continuing discrimination, pervasive bias, or unlawful employment policies, thus entitling them to relief from the time limits in the Code of Federal Regulations. From their complaint and the trial record it is apparent that the appellants seek relief not from an unlawful program of discrimination, but from specific, perhaps unrelated instances of it. For example, the complaint states that "[b]ecause of the non-selection of plaintiff Milton under JOA 275, both plaintiffs filed [an informal administrative] complaint." Complaint, ¶ 17, *located in* R.1.[15] Similarly, they filed a formal complaint "[b]ecause of their denial to the position advertised by JOA 22." *Id.* ¶ 19. Rather than referring to employment *policies*, the appellants allege only that "[t]he actions of defendants ... in failing to select and/or promote plaintiffs to the vacant GS-14 positions for which they were qualified, were motivated by considerations of the sex of plaintiffs (females) and therefore defendants are in violation of Title VII." *Id.* ¶ 24. Even though the plaintiffs sought a promotion "retroactive to the date of the first refusal to select plaintiff," Trial Brief of Plaintiff Milton at 4, *located in* R.22, they simply failed to argue that they were suffering under a continuing policy of discrimination.[16] This deficiency prevents the

---

15. "R." designates the record on appeal.

16. We can find nothing in the record of the proceedings before the District Court to indicate that the appellants were relying on a theo-

appellants from claiming now that the six denials of promotion constituted a scheme.

The reason for limiting claims to present violations (*i. e.*, those for which a timely complaint was filed or for which a discriminatory scheme is alleged) is to "protect employers from the burden of defending claims arising from employment decisions that are long past." *Delaware State College v. Ricks*, —— U.S. ——, ——, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980). Some of the claims in the present case extend back to 1972. Absent allegations connecting these remote claims to the ones for which timely complaints were filed, those personnel actions for which the appellants did not file a timely complaint—JOA 187, 139, 298, and 70—are now time-barred. The appellants' failure to litigate this issue at trial precludes them from raising it on appeal. Consequently, the only personnel actions properly before the trial court were JOA 22 and JOA 275.

## IV. THE CLAIMS OF DISCRIMINATION WITH RESPECT TO JOA 22

■ Appellants' fifth claim rests on their assertion that they were entitled to relief for the DLA's failure to promote them to JOA 22, even though neither appellant qualified for the top group of five applicants. In their brief discussion of JOA 22, appellants simply argue that the defendants adduced no evidence that the selecting official was compelled to choose the highest ranking applicant.

The major obstacle to the appellants' claim regarding JOA 22 is that they never challenged the fairness or neutrality of the first stage of the selection process—the rating system—in the District Court. Their failure to challenge either their rankings or the validity of the two-stage procedure precludes them from now claiming that they did not need to rank in the top group in order to be selected for the promotion. They cannot here claim discrimination in those procedures that they did not challenge at trial. Consequently, we affirm the trial court's decision, holding that the appellees met their burden of proof in JOA 22,[17] to wit, that the appellants were legitimately not selected for the position because they did not rate high enough to be placed in the top group of applicants.

## V. THE CLAIMS OF DISCRIMINATION WITH RESPECT TO JOA 275

Although Milton applied for JOA 275 and was included among the final group of applicants to be interviewed, Whelan elected not to apply for the position. Consequently, before reaching the merits of Whelan's claim of discrimination regarding JOA 275, we must first decide whether she can be considered a "constructive applicant," entitled to relief as if she had applied for the job.

Whelan argues that because of past acts of discrimination she was discouraged from

ry of "continuing violations." Indeed, everything that we have examined points to the opposite conclusion. It is also worth noting that the opinion of the District Court, which offers a thorough and thoughtful analysis, never once even suggests that appellants had asserted a theory of continuing violations.

17. As noted in section II, the trial court relied on *Day v. Matthews*, 530 F.2d 1083 (D.C.Cir. 1976), in describing appellees' burden of proof. *Day* holds that a defendant must show clear and convincing evidence that even absent discrimination the plaintiff would not have been awarded the disputed job. Normally, once a plaintiff has made out a prima facie case of unlawful discrimination, "the burden . . . shifts to the employer [to prove] that he based his employment decision on a legitimate consideration, and not an illegitimate one." *Furnco Con-*

*struction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). However, in this case, appellees did not seriously contest appellants' prima facie case and virtually conceded that unlawful discrimination may have been a factor in certain of the disputed employment decisions. Given these concessions, the District Court correctly applied *Day* in defining appellees' burden of proof. *Furnco* applies when a defendant is merely responding to a prima facie case; *Day* applies when there is conceded or proven discrimination. *See Rogers v. Equal Employment Opportunity Comm'n*, 551 F.2d 456 (D.C.Cir.1977); *Bundy v. Jackson*, 641 F.2d 934 at 652 (D.C.Cir.1981).

Additionally, it should be noted that the appellees have raised no objection to the District Court's application of *Day* in this case.

applying for JOA 275. In support of her argument, Whelan states that she had been selected for one of the earlier jobs, JOA 298, but that General Simon disapproved her selection, an act that she claims was unlawful. *See* notes 5 & 11, *supra.* Since General Simon still had authority to approve or disapprove of selections, Whelan believed it would be futile for her to apply for JOA 275. Since she would have actively sought the position but for this discriminatory behavior, Whelan claims that she should be considered a constructive applicant.

The leading case discussing constructive applicants is *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). In *Teamsters*, several of the plaintiffs had never applied for the disputed jobs, allegedly because they were aware of the employer's discriminatory policies. Because Congress vested broad equitable powers in courts to fashion the most complete relief possible in Title VII cases, the Supreme Court decided that

> an incumbent employee's failure to apply for a job is not an inexorable bar to an award of retroactive seniority. Individual nonapplicants must be given an opportunity to undertake their difficult task of proving that they should be treated as applicants and therefore are presumptively entitled to relief accordingly.

*Id.* at 364, 97 S.Ct. at 1869. The Court recognized that "[a] consistently enforced discriminatory policy can surely deter job applications from those who are aware of it and are unwilling to subject themselves to the humiliation of explicit and certain rejection." *Id.* at 365, 97 S.Ct. at 1869. "When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application." *Id.* at 365–66, 97 S.Ct. at 1869–70.

Of course not all nonapplicants are entitled to relief. In order to be treated as a constructive applicant, the plaintiff must "show that he was a potential victim of unlawful discrimination," *id.* at 367, 97 S.Ct. at 1870, and he carries the difficult "burden of proving that he would have applied for the job had it not been for" the employer's discriminatory practices. *Id.* at 368, 97 S.Ct. at 1871. *See also Reed v. Lockheed Aircraft Corp.*, 613 F.2d 757, 761–62 (9th Cir. 1980) (relying on *Teamsters* to reject the argument that the plaintiff suffered no discrimination because she had not applied for a particular training program).

In the present case Whelan applied and was rejected for four job openings before JOA 275 was announced. The selecting officer initially had chosen her for JOA 298, but later General Simon, who had the responsibility for approving job selections, rejected Whelan. The District Court expressly found, and we find no reason to disagree, that the "cancellation of Ms. Whelan's selection would not have occurred had she been a male—she was fully qualified for the post in every conceivably relevant respect." Memorandum Opinion, *reprinted in* J.A. at 19a. However, although the District Court found that "Plaintiff Whelan, discouraged by her lack of success in having sought promotion to several prior vacancies, did not apply," *id.* at 17a, it did not expressly find that Whelan qualified as a constructive applicant under the standards set forth in *Teamsters*. Consequently, even though there appears to be ample evidence in the record to suggest Whelan would have applied to JOA 275 had she not been discouraged by General Simon's action, we leave it to the District Court on remand to decide whether Whelan was indeed a constructive applicant.

We now turn to the appellants' claims regarding the denial of promotion in JOA 275.[18] In support of a finding that the

---

18. For the balance of the discussion we assume that Whelan may be treated as a constructive applicant. Of course, actual determination of that issue is left to the District Court. We also

assume, for the sake of discussion, that Whelan would have made the top group of applicants—a necessary prerequisite for relief in

appellees had met their burden of proof, the District Court concluded that "the evidence convincingly demonstrates that neither plaintiff was the best qualified for Vacancy No. 275." Memorandum Opinion, *reprinted in* J.A. at 17a. The court based its conclusion concerning the appellants' relative qualifications solely on the numerical ratings that the appellants received in the first stage of the selection process. Milton had a score of 90, while the person selected for the job scored 96.3. Whelan, even though she did not apply, had scored 88.5 for the previous job opening, (*i. e.*, JOA 70) and 88.85 on the job opening following JOA 275 (*i. e.*, JOA 22).

The basis for the District Court's decision is flawed, however, because the rating score alone does not determine which candidate is the best qualified for a particular job. Instead, the evidence in the record makes it plain that the rating only determines whether a candidate is to be placed in the top group of applicants to be interviewed by the selecting official. While the standards to be used by the selecting official are not set forth in the record, it is apparent that he does not rely solely on the rating system to make his decision. For if the selecting official needed no information other than the relative ranking of the candidates before the interview, there would be no purpose in the interview itself.

Our conclusion that the rating scores alone are not a legitimate reason for the non-selection of the appellants (assuming, of course, that they have been chosen for the top group) is borne out by the evidence in the record. Plaintiff's Exhibit 8, tab F, which was admitted into evidence, contains the notes of an EEOC investigator. From those notes it is plain that the highest ranking candidate was not selected to fill the vacancies in JOA 70 and 139. In JOA 298 the selectee did not come from the top group at all, but was hired laterally. Consequently, the selecting official's decision following the interview must involve more evidence than provided by the relative rankings of the candidates before the interview.

█ Accordingly, we conclude that the trial court did not identify any legitimate reason, as articulated by the appellees during trial, sufficient to establish that the appellees have satisfied their burden of proof. Consequently, we remand the case to the District Court to determine whether there is on the existing record a *legitimate* non-discriminatory reason for not promoting the appellants, and if so, whether there is clear and convincing evidence that, even absent the alleged discrimination, neither appellant would have been selected for the job under review. *See* note 17, *supra.*[19]

## VI. CONCLUSION

We affirm the holding of the District Court that the appellants' claims on JOA 187, 139, 298, and 70 are "time-barred," because those claims were not filed until after the applicable limitation period had run. We also affirm the holding of the District Court that as to JOA 22 the appellees met their burden of proof, and that the appellants failed to rebut that proof. However, with respect to the appellants' claim regarding JOA 275, we reverse the District Court's holding that the appellees carried their burden of articulating a legitimate *non-discriminatory reason* for not promoting the appellants; we therefore re-

this case. That determination also is left to the District Court on remand. *See* note 19, *infra.*

**19.** As a part of its inquiry, the District Court will first have to determine whether Whelan would have been chosen for the top group of applicants to be interviewed by the selecting official. This determination is particularly difficult because it requires the trial court to speculate as to what might have happened had Whelan applied. We suggest, however, that the court should consider more evidence than

Whelan's scores on the job applications immediately preceding and following JOA 275. For example, it could consider whether the number of persons chosen to be interviewed might have been expanded to include one more person, and whether the job requirements for JOA 275 are sufficiently similar to those for JOA 22 and JOA 70 to permit consideration of her scores for those jobs. No doubt the District Court will find other considerations to guide its inquiry in this difficult factual determination.

mand the case to the District Court for further determinations consistent with this opinion. If the District Court ultimately finds that appellees have not satisfied their burdens of proof, and that appellants have carried their burden of persuasion, then the trial court shall frame appropriate relief.