**Cecilia KELLER, Plaintiff,**

v.

**ASSOCIATION OF AMERICAN MEDICAL COLLEGES, Defendant.**

**Civ. A. No. 84–3790.**

United States District Court, District of Columbia.

Sept. 30, 1985.

Rufus Beatty, Jr., Washington, D.C., for plaintiff.

Carl W. Vogt, Joseph A. Keyes, Jr., Washington, D.C., for defendant.

## MEMORANDUM

OBERDORFER, District Judge.

### I.

Plaintiff, a white female citizen of the District of Columbia, was born in Costa Rica and is of Hispanic origin. On December 13, 1984, she sued her former employer,[1] claiming in essence that in February 1982, she was placed on probation for about one month and that her job was terminated on November 18, 1983, because of her Hispanic origin. She charges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981. She also claims that her firing violated the terms of her employment contract. Finally, plaintiff claims that defendant intentionally inflicted emotional distress upon plaintiff when it discharged her.

The case is now pending on defendant's motion for summary judgment. The motion is supported by a meticulous Statement of Material Facts as to Which There Is No Genuine Issue (supported by detailed affidavits and exhibits), and a well-crafted and thorough Memorandum in Support of the Motion for Summary Judgment. After consideration of Plaintiff's Opposition to Defendant's Motion for Summary Judg-

---

1. Association of American Medical Colleges ("AAMC").

ment, Counter-Statement of Material Facts as to Which There Is A Genuine Issue, and Points and Authorities in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment, as well as Defendant's Reply, the Court is persuaded that defendant's motion should be granted.

Defendant contends that:

(1) Plaintiff's section 1981 claim· is time-barred;

(2) In the alternative, section 1981 created no cause of action on the facts of this case;

(3) Plaintiff presented to the Equal Employment Opportunity Commission ("EEOC") only a claim based on national origin so that no Title VII claim based on race will lie in court;

(4) The claim based on discriminatory discipline is barred by plaintiff's failure to present it to the EEOC in the time required by law;

(5) In any event, undisputed facts establish that there was no discrimination based on either race or national origin, and that there was no breach of any employment contract; and

(6) The emotional distress claim is without merit.

## II.

### A.

■ Defendant's challenge to the section 1981 claim is well-taken. It has been established since 1983 by the District of Columbia courts that section 1981 claims are governed by the one year limitation specially provided by the D.C. Code Ann. § 1–2544(a)

(1981) for civil rights actions in the District of Columbia.[2] *Parker v. Baltimore & Ohio RR Co.*, 555 F.Supp. 1182, 1187 (D.D.C.1983); *see Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975); *see also Davis v. Potomac Electric Power Co.*, 449 A.2d 278 (D.C.1982).

■ Plaintiff's section 1981 claim is time barred because it was filed in December 1984, more than one year after plaintiff's termination of November 1983 or her suspension of 1982.[3] In view of this ruling, it is unnecessary to address the more difficult question of whether discrimination allegedly based on national origin is actionable under section 1981.

### B.

Defendant challenges the Court's jurisdiction on the subject matter of plaintiff's Title VII claim of discrimination based on *race,* contending that plaintiff never presented that claim to the EEOC.[4] Defendant's theory is too technical for application to a remedial statute such as Title VII.

In 1977, plaintiff came into an office staffed by three black female employees, one of whom was her supervisor. Affidavit of Samuel Morey, AAMC Business Manager, April 19, 1985, at ¶ 4. Plaintiff's complaint against AAMC, filed with the D.C. Office of Human Rights on November 30, 1983 and cross filed with EEOC, alleged discrimination. The employer and EEOC were sufficiently apprised of the elements of plaintiff's discrimination claim to respectively defend against and investigate that claim; indeed, they have done so quite ef-

---

**2.** D.C.Code Ann. § 1–2544(a) (1981) requires claims of discrimination to be filed "within 1 year of the occurrence of the unlawful discriminatory practice."

**3.** Timely filing of a racial discrimination charge with the EEOC will *not* toll the running of the limitation period applicable to a § 1981 action. *Johnson v. Railway Express, supra,* 421 U.S. at 462–67, 95 S.Ct. at 1721–1724. Thus, plaintiff's November 30, 1983 filing and the subsequent processing of that claim did not toll the running of the limitation period on her § 1981 claim.

**4.** "Prior to institution of suit, an individual asserting a violation of Title VII must register [her] grievance with the Equal Employment Opportunity Commission." *Shehadeh v. Chesapeake and Potomac Telephone Co. of Maryland,* 595 F.2d 711, 716–17 (D.C.Cir.1978) (footnote omitted). Defendant contends that plaintiff's EEOC claim alleged discrimination based on national origin, not race.

fectively. Common law pleading was eliminated in 1938 when the Congress acquiesced in the Federal Rules of Civil Procedure and should not be resurrected in this Title VII case.

### C.

■ Defendant's challenge to the *timeliness* of plaintiff's Title VII claim derived from her being placed on probation, however, is well-taken. Under applicable regulations, plaintiff's administrative complaint regarding her being placed on probation or otherwise disciplined was not deemed filed with EEOC within the 300 days allowed by 42 U.S.C. § 2000e–5(e).

Plaintiff was placed on probation for 30 days beginning February 23, 1982, but did not file the complaint with the D.C. Office of Human Rights and EEOC until November 30, 1983. Under the combined operation of 42 U.S.C. § 2000e–5(c), (e) and 29 C.F.R. §§ 1601.13(a)(5) and 1601.13(b)(2)(iii) (1985), her charge was deemed filed with the EEOC 60 days after November 30, 1983, i.e., January 29, 1984—that date was more than 300 days from the date of the allegedly discriminatory act. Failure to file a charge of discrimination within 300 days as required by section 2000e–5(e) will bar a claim based on the allegedly discriminatory act. *See United Air Lines, Inc. v. Evans*, 431 U.S. 553, 555, 97 S.Ct. 1885, 1887, 52 L.Ed.2d 571 (1977); *Milton v. Weinberger*, 645 F.2d 1070, 1074–77 (D.C. Cir.1981).

Nor does plaintiff plausibly connect the probation and other discipline with her termination so as to establish an issue of fact on a continuing violation theory. She was disciplined in 1982 for, among other things, tardiness and failure to process mail as required. As explained below, she was terminated in 1983 when one position in her office became surplus and her performance, including but not limited to the lapses

which provoked the discipline, was considered to be inferior to that of others eligible for the remaining positions. *See Stoller v. Marsh*, 682 F.2d 971, 974–75 (D.C. Cir.1982), *cert. denied*, 460 U.S. 1037, 103 S.Ct. 1427, 75 L.Ed.2d 787 (1983); *Valentino v. U.S. Postal Service*, 674 F.2d 56, 65–66 (D.C. Cir.1982); *Milton v. Weinberger, supra*, 645 F.2d at 1074–77.

### D.

■ The ultimate question remains: was plaintiff's employment terminated because of her Hispanic origin? Recognizing that summary judgment in Title VII cases is not encouraged, and drawing inferences from the facts in the light most favorable to plaintiff, the Court concludes nevertheless that there is no dispute about material facts precluding a summary judgment for defendant on the merits here. *See Beard v. Annis*, 730 F.2d 741, 744 (9th Cir.1984).

To establish a *prima facie* case of racial discrimination, plaintiff must show that: (1) she belongs to a racial minority; (2) she was qualified for continued employment; (3) she was satisfying the normal requirements of her job; (4) she was terminated; and (5) other employees with comparable qualifications and work records who were not members of a racial minority were not terminated.

*Hughes v. Chesapeake and Potomac Telephone Co.*, 583 F.Supp. 66, 69 (D.D.C.1983).

Plaintiff is a member of an ethnic minority group and she did lose her job. Plaintiff was not replaced at all, however, let alone replaced by a member of an allegedly preferred group and has, in other respects as well, failed to make out a prima facie case. In any event, defendant has articulated plausible business reasons for terminating plaintiff's employment, and she has not persuasively argued that these reasons were pretext.[5]

---

5. Plaintiffs in Title VII disparate treatment cases must make out a prima facie case of discrimination. If plaintiff satisfies that burden, the burden then shifts to defendant to articulate legitimate, non-discriminatory explanations for the action taken. If defendant offers such explana-

tions, plaintiff has an opportunity to demonstrate by a preponderance of the evidence that defendant's proffered legitimate explanations were in fact pretexts for discrimination. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093,

Defendant has satisfactorily explained the circumstances of plaintiff's termination in this way: Several factors led AAMC to reorganize its Membership and Publication Orders section in a manner that required termination of one of the two book order clerk positions (plaintiff was one of the two book order clerks). Plaintiff's supervisor, Lossie Carpenter, asked to be relieved of her supervisory responsibilities in defendant's Membership and Publication Orders section at about the same time that management determined that the workload in that section was declining. Ms. Carpenter did not quit her job; she merely stepped down as supervisor. Affidavit of Samuel Morey, April 19, 1985, at ¶¶ 8–13. At about this same time, AAMC's management decided to computerize many functions of the Membership and Publication Orders section, and determined to hire an individual with computer experience to replace Ms. Carpenter as supervisor. *Id* at ¶ 9. The section reorganization created a "selection-out" situation in which plaintiff was selected for termination because: (1) none of the incumbents in the section, including plaintiff, possessed the requisite computer skills; (2) it was appropriate to retain Ms. Carpenter in a line position because she had superior qualifications [6]; (3) there was less work for the book order clerks to perform as AAMC had experienced a decline in publication sales; and (4) as between Ms. Thomas, the other book order clerk in the section, and plaintiff, Ms. Thomas' performance had been better than plaintiff's over time (including, but not limited to, the time for which plaintiff had been on probation). *See generally,* Affidavits of Samuel Morey, April 19, 1985 and May 15, 1985.

Plaintiff does not, except in a peripheral way, confront these factual assertions. For example, plaintiff suggests that it is significant that defendant did not reduce Ms. Carpenter's salary when she relinquished her supervisory post. That circumstance is immaterial, however, to the undisputed fact that someone else who had relevant skills not possessed by plaintiff took over Ms. Carpenter's job. Indeed, plaintiff attempts to obfuscate this fact by intimating that computer skills were a pretextual qualification for Ms. Carpenter's successor. Plaintiff does not, however, effectively dispute the affidavit of defendant's business manager that at the time Ms. Carpenter was replaced, the computerization was being developed, no one in the section had more than rudimentary knowledge of computers and the section needed at least one person with a more sophisticated knowledge of computers, even before they went into service. Affidavit of Samual Morey, May 15, 1985, at ¶ 10.

Plaintiff also challenges defendant's reference to a decline in the workload as a factor in the decision to reorganize the section. Plaintiff states that defendant in its response to interrogatories detailed a decline in the distribution of three of its publications between 1978 and 1983 as follows:

|  | 1978 | 1983 |
|---|---|---|
| Medical School Admission Requirements | 23,364 | 17,113 |
| AAMC Directory of Medical Education | 1,718 | 1,510 |
| AAMC Curriculum Directory | 4,793 | 3,610 |

Points and Authorities in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment at 8–9.

Plaintiff contends that defendant's annual reports and certified financial statements contain different figures than those stated in defendant's answers to interrogatories. Plaintiff suggests that there are "discrepancies" for both volume of publications and income received from all publications. Plaintiff claims that these "discrepancies"

---

1094, 67 L.Ed.2d 207 (1981). This allocation of burdens applies as well in the summary judgment context. *See Talev v. Reinhardt,* 662 F.2d 888, 892 (D.C. Cir.1981); *Beard v. Annis,* 730 F.2d 741, 744 (11th Cir.1984); *Levy v. Ellingwood,* 36 Fair Empl.Prac.Cas. (BNA) 634, 639–41 (D.D.C.1984).

**6.** AAMC subsequently hired a Madelyn Roche, who had experience with on-line information systems, as supervisor of the Membership and Publication Orders section and demoted Ms. Carpenter to Senior Order Clerk. Affidavit of Samuel Morey, April 19, 1985, at ¶¶ 12–13.

constitute a genuine issue of material fact. *Id.* at 9–11.

Defendant responds, however, that even the numbers relied upon by plaintiff disclose a decline in the volume of publications distributed. Furthermore, unlike the interrogatory answers, plaintiff's figures, derived from annual reports and certified financial statements, do not reflect the actual decline in the workload of the book order clerks (such as plaintiff was).

In support of this response, defendant furnished the affidavit of its business manager corroborating its assertion that 90 percent of the orders processed by book order clerks were in three publications and that beginning in 1978 the number of orders for these publications had declined significantly. The number of orders for these publications went from 58,489 in 1978–1979 to 39,225 in 1982–1983 and 1983–1984 sales declined 13 percent from the preceding year. *See* Affidavit of Samuel Morey, May 15, 1985, at ¶ 3; Affidavit of Samuel Morey, April 19, 1985, at ¶ 8. The differences between the workload figures proffered by the parties do not obscure the undisputed fact that the number of orders handled by plaintiff's section declined substantially, even though revenue may have been unaffected. Decline in workload is therefore a plausible element in the decision to reduce the section, leading to plaintiff's termination.

Any issue concerning defendant's preference for Ms. Thomas over plaintiff can also be resolved on the basis of the undisputed facts. Plaintiff does not dispute that, although in 1979 she received a summary evaluation of "above average," she received a rating of "average" in her evaluations from 1980 through 1983. Affidavit of Carolyn Curcio, AAMC Personnel Manager, April 19, 1985 ("Curcio Affidavit") at ¶ 8. By contrast, Ms. Thomas, who was retained in the section after reorganization, was evaluated "above average" in all those years. *Id.* at ¶ 9. Plaintiff had one letter of probation in her file; Ms. Thomas had none. *Id.* at ¶ 11. A compilation of the plaintiff's work product by the personnel

manager compared with her compilation of Ms. Thomas' work product showed many errors in plaintiff's work and only one in that of Ms. Thomas. *Id.* at ¶¶ 12–15. This objective documentary evidence supports defendant's contention that its preference for Ms. Thomas over plaintiff was legitimate and plaintiff has offered no proof that such justifications were pretextual.

Similarly, defendant plausibly explains that the other person in the section, Ms. Gaskins, held a different position from either plaintiff or Ms. Thomas and was not considered for termination during the reorganization. *Id.* at ¶ 19. It is additionally undisputed that at the time of the reorganization and plaintiff's termination, she was not qualified for the only other position in defendant's organization that was available because, *inter alia*, that position required a Masters' Degree. *Id.* at ¶ 22.

The facts and circumstances which culminated in plaintiff's probation further support defendant's claim that plaintiff was discharged for legitimate, non-pretextual reasons. Although plaintiff claims that her probation was provoked or aggravated by discrimination, she does not materially dispute many of the underlying facts asserted in the letter from her supervisor placing her on probation, e.g., that she spent periods of time on the telephone making personal calls, and was often tardy. Plaintiff further does not dispute AAMC's claims that she challenged Ms. Carpenter as supervisor and was often uncommunicative with other employees. *See generally*, Affidavit of Lossie M. Carpenter, April 23, 1985, at 2–3; *see also* Points and Authorities in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Exhibit 23.

In short, objective documentary evidence, such as samples of the work product of plaintiff and her co-worker Ms. Thomas, strongly support the legitimate reasons stated by defendant for its determination that it could use one less employee in its Membership and Publication Orders section and that plaintiff should be the one "selected-out." Plaintiff cannot show that de-

fendant discharged her while retaining another employee with a comparable work record and qualifications; and does not materially dispute defendant's plausible, legitimate, nondiscriminatory reasons for the termination of plaintiff's employment. The plaintiff has failed to make out a prima facie case. She has also failed to traverse the undisputed facts stated by defendant in explanation of its action in a way that could show those explanations to be pretextual. There remain no genuine issues of material fact requiring a trial, and defendant's motion for summary judgment must be granted as to plaintiff's Title VII claim that discrimination played a role in the termination of her employment. *See supra* note 5.

### E.

 This leaves for consideration plaintiff's local law claims that defendant violated an employment contract when it terminated her, and that defendant, by its alleged acts of discrimination, intentionally inflicted emotional distress upon her. Both of these claims are without merit. It is the law in the District of Columbia that employment contracts which have no specific term are terminable at will by either party. *Prouty v. National RR Passenger Corp.*, 572 F.Supp. 200, 204 (D.D.C.1983); *Sullivan v. Heritage Foundation*, 399 A.2d 856, 860 (D.C.1979). This rule is reinforced here by the defendant's original letter offering plaintiff employment stating that:

> [Y]our term of employment is at the pleasure of the AAMC President and is subject to the availability of funds and the satisfactory execution of your duties. Either you or the AAMC may terminate your employment upon giving two weeks notice.

Curcio Affidavit, Exhibit 1.

The intentional infliction of emotional damage charge may stem from the fact that defendant asked plaintiff to leave her job at the close of business on the day it notified her of her termination. That was unpleasant. But the defendant complied with the two weeks notice provision of the employment contract by giving her two weeks pay. In any event, the circumstances do not approach the conduct which would make out a prima facie case, i.e., "outrageous in the extreme, or especially calculated to cause serious mental distress." *See Shewmaker v. Minchew*, 504 F.Supp. 156, 163 (D.D.C.1980), *aff'd*, 666 F.2d 616 (D.C. Cir.1981). *See also Sere v. Group Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C.), *cert. denied*, 459 U.S. 912, 103 S.Ct. 221, 74 L.Ed.2d 176 (1982).

In view of the foregoing the accompanying order will grant defendant's motion for summary judgment and direct entry of judgment for defendant.