**Dorothy L. MILTON, and Eleanor S. Whelan, Plaintiffs,**

v.

**Harold BROWN, Secretary of Defense, and Lt. General W. W. Vaughan, Director, Defense Logistics Agency, Defendants.**

**Civ. A. No. 78-1169.**

United States District Court, District of Columbia.

April 26, 1979.

Frances B. Aubrey, Washington, D. C., for plaintiff Milton.

Samuel C. Hamilton, Silver Spring, Md., for plaintiff Whelan.

Donald Grant, Washington, D. C., of counsel, for both plaintiffs.

Diane M. Sullivan, Washington, D. C., for defendants.

## MEMORANDUM OPINION

GESELL, District Judge.

Plaintiffs are two white females who were employed as Equal Opportunity Specialists (GS–13) by the Department of Defense's Defense Logistics Agency ("DLA"). Within that unit, they worked in the Contract Administrative Services division, Office of Contract Compliance, Cameron Station, Virginia. Plaintiffs unsuccessfully sought relief administratively and then sued in this Court where a trial has been held on their claims that they were each a victim of sex discrimination in having been repeatedly denied promotion to the GS–14 level at DLA despite their outstanding qualifications. Plaintiff Whelan makes the additional claim that she was illegally discriminated against based on her age. A retroactive promotion to GS–14 and back pay is sought by each plaintiff. The Court has jurisdiction under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e–5(f) and 2000e–16(c) & (d), and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a(c).

■ Plaintiffs presented at trial a prima facie case creating an inference of sex discrimination. See Furnco Construction Corp. v. Waters, 438 U.S. 567, 572–79, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978), and McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiffs demonstrated that:

(1) For several years now, they have each been fully qualified by length of service and outstanding performance to be promoted to GS–14;

(2) Both are members of a recognized minority;

(3) Each one of the six GS–14 vacancies which opened up between 1973 and 1976 for which one or both of the plaintiffs applied was filled by a man; and

(4) Despite the fact that a substantial number of women have consistently been employed at the GS–13 level in the headquarters or field offices of DLA, no woman has ever been selected in these locations for promotion to GS–14.[1]

Plaintiffs have thus shifted to defendants the burden of demonstrating that all the allegedly illegal employment decisions were based on legitimate nondiscriminatory considerations. See Furnco Construction Corp. v. Waters, supra, 438 U.S. at 579, 98 S.Ct. 2943. In view of the extremely strong prima facie showing, defendants carry a correspondingly heavier than usual burden.

No claim for injunctive relief, however, is advanced, The Government consequently confronts only prayers for back pay and retroactive promotion. Therefore, in defense, it relies primarily on the proposition that, regardless of whether or not the defendants could be found to have discriminated on the basis of sex, plaintiffs are not entitled to the relief they request. The Court agrees, finding that defendants have met their burden under Day v. Mathews, 174 U.S.App.D.C. 231, 530 F.2d 1083 (1976), of establishing by clear and convincing evidence that, even absent the alleged discrimination, neither plaintiff would have been selected for the jobs under review.

■ Only two of the six GS–14 vacancies that were discussed at trial, Nos. 275 and 22, are at issue. Plaintiffs are time-barred as to all the earlier vacancies. Administrative proceedings were never initiated, either informally or formally, on any of plaintiffs' discrimination claims until January 8, 1976, much more than 30 days after the earlier vacancies in question were filled. 5 C.F.R. § 713.214(a)(1)(i); De Medina v. Reinhardt, 444 F.Supp. 573, 576–77 (D.D.C.1978); Stockton v. Harris, 434 F.Supp. 276 (D.D.C. 1977). Moreover, no waiver of this 30-day requirement was effected by the agency within the meaning of 5 C.F.R. § 713.-214(a)(4). See Notice of Receipt of Dis-

---

1. During the period 1973–1977 all GS–14 positions at Cameron Station were held by males, although by 1976 sixty percent of the employees in grade GS–13 were female. In the entire Contract Administrative Services division, there were from 13 to 16 GS–14 positions, all held by males, although from six to thirteen percent of the 112 to 136 GS–13 positions were held by women.

crimination Complaint dated Aug. 20, 1976. "A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889 52 L.Ed.2d 571 (1977).

Since plaintiffs do not contend and present no evidence that either one of them was denied training opportunities, was delegated inferior work assignments or was subjected to working conditions that were in any respect different from those of their male counterparts, the case boils down to whether or not the proof clearly and convincingly shows that the failure to select either plaintiff for the two GS–14 vacancies at issue would have resulted even in the absence of sex discrimination.

All of the DLA's GS–14 positions were filled in accordance with the applicable Civil Service rules and regulations. When such a vacancy arose, as it did six times at Cameron Station during the 1973–76 period, it was advertised. Applicants for the position were then rated according to their formal credentials and their proficiency in job-related functions. Subsequently the top-rated applicants were identified and then interviewed by the selecting official for ultimate selection. This official would have had nothing to do with either the initial ratings of the applicants or the selection of the top group of three to eight applicants from which he was required to make a selection.

The ratings received by plaintiffs in the two instances under scrutiny are consequently of great significance. Notably, neither plaintiff challenged in any way at trial the neutrality or fairness of the ratings she received for any of the vacancies that opened up during the 1973–1976 period. ■ Vacancy No. 275 had 17 applicants. The male ultimately selected ranked the highest, 96.3 (on a scale of 100). Plaintiff Milton was fifth on the list, in the top five and rated 90. Plaintiff Whelan, discouraged by her lack of success in having sought promotion to several prior vacancies, did not apply. Even if, under *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 362–71, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), the Court must accordingly treat her as a constructive "applicant," the fact remains that plaintiff Whelan would in all likelihood have been rated below the selectee. She had applied for the immediately preceding vacancy and applied for the following one but was rated 88.5 and 88.85, respectively, on those occasions. In sum, the evidence convincingly demonstrates that neither plaintiff was the best qualified for Vacancy No. 275.

Vacancy No. 22 attracted 32 applicants. Both plaintiffs applied: Milton was rated 83.97 and Whelan 88.85. Neither ended up making the top group of five whose ratings ranged between 91.3 and 97.1—the ultimate selectee, a male, rated 96.2. Again, there is clear evidence that neither plaintiff was the best qualified for this position.

No other particularized evidence relating to either vacancy exists that indicates that the applicants' sex played any role in the decisions of the selecting officials. The males chosen were better qualified under the rating system used, and, as previously noted, this system is not being challenged.

Plaintiffs seek to avoid these conclusions by asserting that the defendants should not be allowed to offset the strong inference created by their prima facie case, as strengthened by their statistical evidence. They also point to two occasions when defendants failed to implement the agency's affirmative action program, which incidents plaintiffs maintain substantially bolster their position.

The first of these occurred in September 1974. At that time, Whelan was actually chosen by the selecting official for an open GS–14 position. She was the fourth ranked applicant, but was chosen because of her acknowledged competence and experience

and also apparently because she was a woman. The Court accepts the selecting official's testimony that, while Whelan was not the highest qualified applicant, he had chosen her because of his strong belief that some concrete action was needed to comply with the unit's affirmative action program for women. The selection had then come under review by the selecting official's superiors, as is always the case. It passed muster until the highest level was reached. There, the selection was countermanded by the Commanding General who directed that a lateral transfer be made of a GS–14 male from another unit. The General, now retired, did not testify at the trial. Others who were familiar with his decision testified that he had acted on the basis of Ms. Whelan's limited educational background, her lack of field experience,[2] and the fact that, according to the ratings, she was not the highest qualified. The Court finds from the totality of all the circumstances, particularly the fact that she had been selected by the selecting officer, that this cancellation of Ms. Whelan's selection would not have occurred had she been a male—she was fully qualified for the post in every conceivably relevant respect.[3]

The second incident involves assurances given to plaintiffs by the agency which plaintiffs maintain guaranteed them priority consideration for upcoming GS–14 positions. More specifically, each plaintiff received on April 9, 1976, an official resolution of her informal discrimination complaint which stated that "the complainant will be given priority consideration for selection in all future vacancies for which she qualifies." The term "priority consideration" was then defined as follows:

Priority consideration means that within the framework of positive affirmative actions, there will be a diligent effort to have women in every organization, occupation and level. In any area where there is an absence of any class of employee such as minority, woman or other class employee—first consideration will be to correcting this absence in line with the DoD goal of "a fully integrated workforce."

Neither plaintiff, however, obtained the next vacancy, No. 22. As already noted, their applications for that slot did not even place them within the top group and were therefore not reviewed by the selecting official. Naturally enough, considerable misunderstanding has developed out of the assurances given and the resulting sequence of events. EEO officials intended that plaintiffs would be afforded some concrete preference for future positions. On the other hand, DLA personnel officials believed that the assurances given could not override the rules governing merit promotions or serve as a way to abrogate the normal selection procedure should plaintiffs fail even to qualify for the top group from which the selection was to be made. This interpretation was reasonable, particularly since the assurances have to be viewed as having been highly ambiguous. It further appears that plaintiffs may not claim the advantage of 5 C.F.R. § 713.271(b)(2). The assurances given them do not meet the conditions laid out in that section.

■ The proof as a whole, therefore, establishes that defendants have consistently failed to implement their affirmative action program with respect to the advancing of women to GS–14 positions despite the fact

---

**2.** Defendants have unsuccessfully attempted to explain the repeated nonselection of plaintiffs on the ground that neither plaintiff has ever had field experience. This explanation is pretextual. Field experience was never formally indicated as a prerequisite for the GS–14 jobs in question, women who did have field experience were not selected for other GS–14 positions in the field, and in fact both plaintiffs had had extensive field experience as investigators and supervisors.

**3.** Ms. Whelan has also sought to show that she was discriminated against because of her age. The incident just described is the principal fact on which she relies for this claim, since she did not apply for vacancy No. 275 and did not make the top group for vacancy No. 22. This count must, however, fail. Plaintiff Whelan gave no notice to the Commission of any intent to sue within 180 days of her nonselection for the September 1974 vacancy, as required by 29 U.S.C. § 633a(d).

that at least two well-qualified women applicants have repeatedly sought promotion to that grade. No satisfactory explanation has been presented. This, coupled with plaintiffs' statistical showing and the cancellation of Whelan's selection in 1974, is sufficient to support a very strong inference of sex discrimination during the period when vacancies 275 and 22 were being filled. Yet the proof fails to establish that either female applicant was, for purposes of those two vacancies, as qualified as the males who were selected. Thus, defendants have met their burden under *Day v. Mathews, supra*, of establishing that neither plaintiff would have been selected for the two vacancies even in the absence of sex discrimination. Consequently, back pay or retroactive promotion cannot be granted. Enter judgment for defendants.

The foregoing constitutes the Court's findings of fact and conclusions of law.

SO ORDERED.