Dorothy L. MILTON, et al., Appellants,

v.

Casper WEINBERGER, Secretary
of Defense, et al.

No. 81–2200.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 14, 1982.

Decided Oct. 26, 1982.

As Modified by Memorandum Order
Denying in Part and Granting in
Part Rehearing Dec. 20, 1982.

Frances B. Aubrey, Washington, D.C., for appellants.

Regina C. McGranery, Asst. U.S. Atty., with whom Stanley S. Harris, U.S. Atty., Royce C. Lamberth, R. Craig Lawrence, Mi-

chael J. Ryan, and Diane M. Sullivan, Asst. U.S. Attys., Washington, D.C., were on the brief for appellees. Kenneth M. Raisler, Asst. U.S. Atty., Washington, D.C., also entered an appearance for appellees.

Before ROBINSON, Chief Judge, and WALD and EDWARDS, Circuit Judges.

Opinion for the court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

. We consider this Title VII[1] promotion case for a second time on appeal from a District Court judgment for appellees, the Defense Logistics Agency ("DLA") and certain responsible agency officials. In 1978, appellants Dorothy Milton and Eleanor Whelan brought suit alleging, *inter alia,* that the DLA discriminated against them on the basis of gender in filling six GS–14 job openings ("JOAs"). On the first appeal, we unanimously affirmed the trial court's judgment for appellees as to five of these openings, but reversed and remanded for further determinations to be made on the existing record as to the remaining opening, JOA 275.[2] On the remand, the District Court again entered judgment for appellees. We now affirm.

## I. BACKGROUND

### A. *Facts*

The relevant facts are substantially undisputed and may be stated briefly.[3] The DLA used a two-step selection procedure in filling JOA 275. Agency officials first rated applicants based on their formal credentials and their proficiency in job-related functions, and then interviewed the five top-rated applicants.[4] One person was selected from among the five interviewed. Milton scored 90 on the JOA 275 job selec-

---

1. Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17 (1976 & Supp. IV 1980).

2. *Milton v. Weinberger,* 645 F.2d 1070 (D.C.Cir. 1981) [hereinafter cited as *"Milton I"*].

3. Since the opinion in *Milton I,* 645 F.2d at 1072–73, gives a detailed statement of the facts underlying this case, we merely summarize these facts in this opinion.

4. *Milton I,* 645 F.2d at 1072.

tion rating, placing her fifth on the panel of five.[5]  Whelan never actually applied for JOA 275 and thus was not rated.  She was discouraged from applying because the DLA Director had previously disapproved her selection for a similar job.[6]  Whelan did, however, apply for openings at the same grade level immediately before and immediately after JOA 275, receiving a rating of 88.5 for JOA 70, and 88.85 for JOA 22.[7]

James Cisco, the DLA's selecting official, interviewed the five top-rated candidates for JOA 275 without knowledge of their relative selection ratings.  He put to each interviewee a standard list of questions, including, "What is your concept of management?"[8]  Milton failed to answer this "management-concept" question, while the eventual male selectee answered all of the questions satisfactorily.[9]

## B.  Prior Case Proceedings and the District Court Decision on Remand

After a two-day bench trial in March 1979, the District Court found for appellees on all claims, including the JOA 275 claim.[10]  The trial court's April 26, 1979 Memorandum Opinion first concluded that appellants had made out an "extremely strong" prima facie case of discrimination, and that, as a consequence, under *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978), "the burden had shifted to the appellees to demonstrate 'that all the allegedly illegal employment decisions were based on legitimate nondiscriminatory considerations.'"  *Milton I,* 645 F.2d at 1073.  The opinion then noted that

"the Government 'relies primarily on the proposition that, regardless of whether or not the defendants could be found to have discriminated on the basis of sex, plaintiffs are not entitled to the relief they request.'"  *Id.*  The District Court accepted this proposition and, under the evidentiary standard of *Day v. Mathews,* 530 F.2d 1083 (D.C.Cir. 1976) (per curiam), required appellees to demonstrate by clear and convincing evidence that, even absent the alleged discrimination, neither appellant would have been promoted.  *Milton I,* 645 F.2d at 1073.  The trial court finally concluded that, because of their low rating scores, the evidence was clear and convincing that neither appellant was the best qualified candidate for JOA 275.  *Id.* at 1074.

On appeal, we held that the rating scores did not provide a legitimate nondiscriminatory reason for appellants' promotion denials because the record indicated that rating scores determine only whether an applicant makes it to the final interview.  *Id.* at 1079.  We thus reversed and remanded, instructing the District Court

to determine whether there is on the existing record a *legitimate* non-discriminatory reason for not promoting the appellants, and if so, whether [pursuant to *Day v. Mathews*] there is clear and convincing evidence that, even absent the alleged discrimination, neither appellant would have been selected for the job under review.

*Id.* (emphasis in original).  As will be clear from the discussion below, *see* Part II.A. *infra,* this instruction may have been confusing to the District Court in its considera-

5.  *Id.* at 1073 n. 7.

6.  *Id.* at 1072 n. 5, 1073.

7.  *Id.* at 1079.

8.  March 21, 1979 Transcript of Trial before District Court ("Tr. I") 149–50.

9.  Appellants do not dispute the evidence concerning Milton's failure to answer this question.  Rather, appellants merely contend that, because Milton's response to the question was not offered as a reason for her rejection before trial, the reason must be a pretext for discrimination.  However, both the selecting officer,

Cisco, and his assistant, Joseph Hogan (who was also present at the interview), testified that Milton's failure to answer this question and the eventual selectee's satisfactory answers to all of the questions provided the basis for appellees' selection.  Tr. I 142–43 (Hogan); March 23, 1979 Transcript of Trial before District Court ("Tr. II") 9 (Cisco).

10.  *Milton v. Brown,* 471 F.Supp. 150 (D.D.C. 1979), aff'd in part and rev'd in part sub nom. *Milton v. Weinberger,* 645 F.2d 1070 (D.C.Cir. 1981).

tion of the case on remand. On re-reading the instruction, it appears that the words *"and if so"* should have been *"and if not."* This error in wording was probably caused by the fact that on the first appeal "appellees did not seriously contest appellants' prima facie case and virtually conceded that unlawful discrimination may have been a factor in certain of the disputed employment decisions." *Id.* at 1077 n. 17. We therefore assumed that no legitimate nondiscriminatory reason existed, and that *Day v. Mathews* was the appropriate test to be applied on remand. *Id.*

On remand, the District Court again entered judgment for appellees. Its September 15, 1980 Memorandum Opinion[11] first considered the applicability of *Day v. Mathews* in light of *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *Burdine,* decided the same day as *Milton I,* held that, in rebutting a prima facie case of discrimination, a Title VII defendant need only "articulate" a legitimate nondiscriminatory reason for its employment decision. The District Court held *Day* applicable notwithstanding *Burdine,* explaining that

> this Circuit adhered to the standard announced in *Burdine* even before that case was decided; however, it is the law in this Circuit that the defendants are held to a much more stringent showing that required by *Burdine if the plaintiffs have gone beyond a prima facie showing.* In this instance, this Court held that plaintiffs had made an extremely strong prima facie showing.[12]

Even under the stringent evidentiary standard of *Day,* however, the District Court found that appellees had borne their burden. The court found, first, that "[i]f Whelan had applied for JOA 275 she would not have been selected for the position because [based on her ratings for comparable jobs] she would not have rated high enough

to be placed in the top group of applicants eligible for interview by the selecting official." Memorandum Opinion, *reprinted in* App. A.11. As for Milton, the District Court based its finding of a legitimate nondiscriminatory reason on her inability to answer Cisco's "management-concept" question during the selection interview. The court concluded that, because Milton "was applying for a position involving matters 'germane to program administration and management,' her ability to answer this question was obviously relevant to her capacity to function effectively in [the] position." *Id.* A.11–12. Pointing out that Cisco had no prior knowledge of Milton's rating score, the District Court opined that "Milton's low score in some measure corroborates the conclusion of the interviewing official that Milton was not the best qualified [candidate] . . . ." *Id.* The trial court entered judgment accordingly, and this appeal followed.

## II. DISCUSSION

Appellants' sole contention is that the District Court's factual findings on remand must be reversed for lack of record evidence. Although we find that the trial judge erred in holding appellees to a "clear and convincing" burden of proof, our review of the record reveals no basis upon which to reverse the judgment of the District Court. We therefore affirm the District Court's decision.

### A. *The Applicable Evidentiary Standard*

As we have already noted in Part I.B. *supra,* there remains in this case some confusion over the application of *Day v. Mathews.* This confusion is attributable in part to the Government's apparent concession of discrimination at the trial and on the first appeal, *see Milton I,* 645 F.2d at 1077 n. 17, and in part to our ambiguous instruction on the remand of this case, *id.* at 1079. On

---

11. *Milton v. Weinberger,* 645 F.2d 1070 (D.D.C. 1981), *reprinted in* Appendix ("App.") A.7 [hereinafter cited as "Memorandum Opinion"].

12. Memorandum Opinion, *reprinted in* App. A.9 (emphasis added). The court correctly not-

ed, in addition, that on appeal we had approved its application of *Day.* However, we made clear that "*Day* applies when there is conceded or proven discrimination." *Milton I,* 645 F.2d at 1077 n. 17.

remand, although the Government made it clear for the first time that it never intended to concede any discrimination and that legitimate nondiscriminatory reasons existed to justify appellants' promotion denials, the District Court nevertheless read our opinion in *Milton I* as explicitly approving reliance on *Day v. Mathews*. Memorandum Opinion, *reprinted in* App. A. 9. We now write to clarify and to make it plain that, given the facts of this case, the District Court was in error in holding appellees to the stringent "clear and convincing" standard of proof of *Day v. Mathews*.

1. *Allocation of Evidentiary Burdens Under Title VII:* McDonnell Douglas/Burdine

The basic allocation of burdens and order of presentations of proof in a Title VII case alleging discriminatory treatment has been clearly set forth by the Supreme Court:

First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." ... Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Department of Community Affairs v. Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093 (quoting *McDonnell Douglas Corp. v.*

*Green,* 411 U.S. 792, 802, 804, 93 S.Ct. 1817, 1824, 1825, 36 L.Ed.2d 668 (1973) ). Within this framework, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093.

2. *The Meaning of* Day v. Mathews

It is only after discrimination has been proven or conceded pursuant to *McDonnell Douglas/Burdine* that *Day v. Mathews* may come into play. To apply *Day* before liability has been established would be contrary to the well-established principle that the ultimate burden of persuasion remains at all times with the plaintiff.

*Day v. Mathews* has nothing to do with whether a defendant is guilty of discrimination, but instead focuses on the question of *remedy. Day* derives from Title VII principles applied in disparate impact cases in which the plaintiff class establishes liability based on some employment policy that has had the effect of discriminating against the entire class. Once the class establishes liability in such cases, a discrete remedy phase begins. Any individual class claimant may raise a presumption that he is entitled to relief upon a prima facie showing of class membership. The burden of proof then shifts to the employer to rebut that presumption in each individual case.[13] *Day* applies the same burden-shifting principle in the Title VII disparate treatment context.

■ *Day's* application of this principle simply recognizes that a plaintiff whose *right* to protection from discrimination has

**13.** *See Baxter v. Savannah Sugar Ref. Corp.,* 495 F.2d 437, 444–45 (5th Cir.) (cited in *Day v. Mathews,* 530 F.2d at 1085), *cert. denied,* 419 U.S. 1033, 95 S.Ct. 515, 42 L.Ed.2d 308 (1974). This same burden-shifting principle was followed in *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 361–62, 97 S.Ct. 1843, 1867–68, 52 L.Ed.2d 396 (1977) and *Franks v. Bowman Transp. Co.,* 424 U.S. 747, 772–73 & n. 32, 96 S.Ct. 1251, 1267–68 & n. 32, 47 L.Ed.2d 444 (1976), both of which involved a "pattern or practice" of disparate treatment.

In *LULAC v. City of Salinas Fire Dep't.,* 654 F.2d 557 (9th Cir. 1981), a disparate treatment case, the court held:

[o]nce intentional discrimination in a particular employment decision is shown, ... the disadvantaged applicant should be awarded the position retroactively unless the defendant shows "by 'clear and convincing evidence' that even in the absence of discrimination the rejected applicant would not have been selected for the open position."

*Id.* at 558 (quoting *Marotta v. Usery,* 629 F.2d 615, 618 (9th Cir. 1980)).

been violated still may be denied a full remedy. *See Smith v. Secretary of the Navy,* 659 F.2d 1113, 1120 (D.C.Cir.1981) (citing *Day* for the proposition that "this court has recognized that the questions of statutory violation and appropriate statutory remedy are conceptually distinct"). For example, if two employees are denied the same job promotion for concededly discriminatory reasons, the employer may nonetheless establish that one of the claimants is not entitled to a promotion under *Day v. Mathews* by offering clear and convincing evidence that there was only one job opening and that the other applicant was more qualified. Since only one of the two victims of discrimination would have been promoted "but for" the discrimination, the other would not be entitled to an award of the job notwithstanding the unlawful reason for the denial. *Cf. Franks v. Bowman Transportation Co.,* 424 U.S. 747, 773 n. 32, 96 S.Ct. 1251, 1268 n. 32, 47 L.Ed.2d 444 (1976) (evidence that no vacancies were available at the time class member applied for job relevant to whether employer has satisfied burden of proving that claimant was not in fact a victim of previous hiring discrimination).[14]

3. *The Misapplication of* Day v. Mathews *in this Case*

▮ In the instant case, appellants presented an "extremely strong" prima facie case of discrimination, but despite that showing they did not persuade the District Court that they had *proved* discrimination. The trial court's original decision proceeded directly to the *Day* inquiry without completely analyzing liability for discrimination; on remand the trial court again stopped short of concluding that appellants had proved discrimination, cryptically suggesting that they had "gone beyond" a prima facie case. Nor did appellees *concede*

discrimination. While the record on the prior appeal appeared to show such a concession, the District Court did not purport to base its application of *Day* on admitted discrimination. Both on remand and on this appeal, moreover, appellees insisted that liability for discrimination had neither been proved nor conceded. Absent any basis for a finding of discrimination and with liability still a live issue, the District Court thus erred in holding appellees to the *Day* burden of "clear and convincing" proof. All that should have been required to rebut appellants' prima facie case was "articulation" of a legitimate nondiscriminatory reason for appellants' nonpromotions. *See Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093.

B. *Review of the District Court's Findings*

We have little difficulty affirming the District Court's finding that appellees satisfactorily articulated a legitimate nondiscriminatory reason for rejecting Whelan's supposed JOA 275 application. The record seems clear, as found by the trial court, that "[i]f Whelan had applied for JOA 275 . . . she would not have rated high enough to be placed in the top group of applicants eligible for interview by the selecting official." Memorandum Opinion, *reprinted in* App. A.11.

▮ The District Court's finding as to Milton, on the other hand, is somewhat troubling. That finding rests solely on Milton's failure to answer a single question during the final selection interviews for JOA 275. Appellees conceded that Milton had an otherwise excellent record; they also admitted that she gave satisfactory answers to all other questions in the interview. Further, appellees made no attempt to distinguish Milton from the eventual male selectee, except on the basis of her

14. Nothing in the aforecited "example" is intended to suggest that the employee who is denied the promotion should also be denied back pay, seniority credit, attorney's fees, costs, equitable relief, or the like, where any such relief is otherwise found to be appropriate. Under *Day v. Mathews,* the defendant—a proven or admitted discriminator—bears a very

high burden of proving that relief should not issue despite the finding of discrimination. As was made clear in *Day:* "[I]t is only equitable that any resulting uncertainty [as to relief] be resolved against the party whose action gave rise to the problem. Thus, once discrimination is shown, relief should not be narrowly denied." 530 F.2d at 1086.

failure to respond to the "management-concept" question during her interview. Appellees' reason for rejecting Milton would be more persuasive if they had been clear and forthright in advancing it throughout this controversy; unfortunately, the record suggests that Milton's interview performance may have been cited for the first time at trial as a *post hoc* rationalization of her promotion denial. Moreover, because the "management-concept" question was patently ambiguous, Milton's failure to answer might well be attributed more to an abundance of caution than to a deficiency of qualification.[15]

Nevertheless, while we may suspect that Milton was victimized by the DLA's poor selection procedures, we decline to second-guess an employer's personnel decision absent demonstrably discriminatory motive. " 'The fact that [we] ... may think that the employer misjudged the qualifications of the applicants does not in itself [create] ... Title VII liability ....' " *St. Peter v. Secretary of the Army,* 659 F.2d 1133, 1138 n. 5 (D.C.Cir.1981) (quoting *Burdine,* 450 U.S. at 259, 101 S.Ct. at 1096), *cert. denied,* 455 U.S. 1016, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1982). We also understand that, in articulating a legitimate nondiscriminatory reason for its employment decision, an employer "need not persuade the court that it was actually motivated by the proffered reasons .... It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094 (citation and footnote omitted).

■ Finally, we recognize that the District Court was convinced "that the defendants [had] produced *clear and convincing evidence* that plaintiff Milton was not awarded JOA 275 for a valid nondiscriminatory reason." Memorandum Opinion, *reprinted in* App. A.11 (emphasis added). This, in effect, is equivalent to a finding that appellant failed to prove that appellees' reason for nonselection was pretextual. *See* note 17 *infra.* On the record in this case, we can find no basis to overturn this finding.[16]

■ We are thus compelled to conclude that Milton's failure to answer the "management-concept" question adequately justifies her nonselection. There is record evidence to support the District Court's finding that the question bore some relevance to the job in general and to Milton's qualifications in particular; not only did the listed job requirements specifically include management skills, but the record indicates that Milton's prior job evaluations showed a deficiency in this area. We conclude, therefore, that the record supports the trial court's determination that appellees carried their burden of articulating a legitimate nondiscriminatory reason for Milton's non-promotion and that appellants failed to prove that the reason was pretextual.[17]

---

**15.** Apparently, all of the interview questions were vaguely framed so that the candidates would have an opportunity "to generally express themselves in matters relating to the program." Tr. I 142. The "management-concept" question, however, did not ask about *program* management. And without any specific context, an interviewee understandably might have been confused about the scope of the question.

**16.** We defer to the judgment of the District Court under the usual "clear error" standard of review. No special deference is due merely because the trial court erroneously held appellees to a higher standard of proof than should have applied.

**17.** We recognize that an "extremely strong" prima facie case may lend special probative force to a claim of pretext. Indeed, an especially strong prima facie case combined with a relatively weak rebuttal by the defendant may entirely obviate any need for further inquiry into pretext. *See Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. at 1094 n. 10 ("there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation"). Nonetheless, the trial court in this case found nondiscriminatory reasons by clear and convincing evidence and that determination necessarily includes an implicit finding that appellees' justification for not promoting Milton was nonpretextual. *Cf. Klapac v. McCormick,* 640 F.2d 1361, 1364–65 (D.C. Cir.1981) (explicit finding on pretext issue unnecessary when court makes general finding of nondiscrimination). We must emphasize, however, that failure to address specifically the issue of pretext improperly telescopes the se-

### III. Conclusion

We remanded in this case with instructions that the District Court determine whether appellees had borne their burden of articulating legitimate nondiscriminatory reasons for appellants' nonpromotions. The trial court held appellees to an unnecessarily high evidentiary standard, but nonetheless found that appellants were denied promotions for legitimate nondiscriminatory reasons. Giving the trial court's findings the traditional deference due under "clear error" principles, we conclude that appellants do not show reversible error. The judgment is therefore

*Affirmed.*

quence of proof under the *McDonnell-Douglas/Burdine* framework, and may thereby deny the plaintiff "a full and fair opportunity to demonstrate pretext." *Burdine,* 450 U.S. at

256, 101 S.Ct. at 1095. Accordingly, it is always preferable for the trial court to include findings on pretext where appropriate.