**Clyde SMITH, Plaintiff-Appellant,**

v.

**STATE OF GEORGIA and the Department of Human Resources, et al., Defendants-Appellees.**

**No. 83–8753.**

United States Court of Appeals, Eleventh Circuit.

Jan. 2, 1985.

Clark, Circuit Judge, filed dissenting opinion.

Robert H. Stroup, Atlanta, Ga., for plaintiff-appellant.

Gary R. Hurst, Atlanta, Ga., for defendants-appellees.

Before GODBOLD, Chief Judge, CLARK, Circuit Judge, and THOMAS *, District Judge.

DANIEL HOLCOMBE THOMAS, District Judge:

### FINDING OF FACTS

Clyde Smith brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3 and the First and Fourteenth Amendments of the United States Constitution. Smith alleges violations of his rights because he was denied promotion to a supervisory position in retaliation for his testifying in behalf of a co-worker in her sex discrimination action against the employer.

Smith is a white male employed by the Disability Adjudication Section (DAS) of the Department of Human Resources of the State of Georgia. The DAS has the

---

* Honorable Daniel Holcombe Thomas, U.S. District Judge for the Southern District of Alabama, sitting by designation.

responsibility of examining applications for benefits under the United States Social Security System. Hired as a counselor in 1967, Smith subsequently received several promotions and eventually was elevated to the Quality Assurance Unit in March, 1975. Since this last promotion Smith has on several occasions unsuccessfully attempted to obtain a promotion to the position of supervisor.

Juanita Nicholson, a DAS counselor and co-worker of Clyde Smith, filed a charge of sex discrimination with the Equal Employment Opportunity Commission (EEOC) against the DAS in March of 1974. Nicholson amended her charge to include a claim for retaliation. At an agency grievance hearing on April 2, 1975, Smith, along with other employees, testified in favor of Nicholson. Promotions to supervisory positions were made by the DAS between April 1, 1975, and December 1, 1978; however, none of those who served as witnesses in the grievance hearings were given those promotions, even though those persons applied repeatedly and some were seemingly qualified.[1]

The factual time frame that is relevant to this appeal concerns the events relating to the July, 1977, promotions. For the July, 1977, selection, William Jenkins, Director of the DAS, approved the following evaluation process. Candidates were reviewed based on three criteria: (1) oral interviews; (2) a review of each applicant's use of sick leave; and (3) a questionnaire completed by the immediate supervisor. The candidates' respective supervisors were asked to rate the applicant on a numerical point scale for productivity, quality of work, degree of supervision required, dependability, knowledge of job, ability to work with others, and the ability to communicate with others. James T. Bell, a supervisor of five of the eleven candidates in July, 1977, gave each

of his supervisees a perfect score of twenty in the categories of ability to communicate with others and ability to work with others.[2]

The evaluation committee who reviewed the scores of all eleven applicants believed that Bell's ranking was not in compliance with that of the other supervisors, and consequently compiled two lists for submission to Jenkins. These two lists had the names of the five highest ranking applicants of the entire eleven. The lists were referred to as the pre-adjustment list and the post-adjustment list. The pre-adjustment list included the names of the five candidates ranked highest strictly as the points were assigned by each candidate's supervisor. The post-adjustment list included the names of the five highest ranking candidates awarding every candidate the maximum score in the categories of ability to work with others and ability to communicate with others. Smith's name was on both lists. He was ranked No. 3 on the pre-adjustment list and No. 2 on the post-adjustment list. This proved to be crucial because only two promotions were available. The committee submitted both lists to Jenkins with a memorandum explaining why the two lists were compiled. The committee did not indicate a preference for either list. Jenkins, exercising his discretion and authority as the appointing director, promoted the top two candidates as recorded on the pre-adjustment list. As a result, Smith did not receive a promotion.

After receiving a right to sue letter from the EEOC, Smith filed a complaint in the district court contesting his employer's failure to promote him in July, 1977, December, 1977, and December, 1978.[3] The district court made findings of fact and conclusions of law finding that Smith had established a *prima facie* case of a violation

---

**1.** Statistical evidence would support the fact that at least some of those testifying employees would have been promoted given the number of times they applied and the number of other applicants.

**2.** Smith was not under the supervision of Bell. Previously the court of appeals held that Bell's

action did not violate Smith's due process rights. *Smith v. State of Georgia,* 684 F.2d 729, 733 (11th Cir.1982).

**3.** This appeal only concerns the selection in July, 1977.

of § 704 of the Civil Rights Act regarding the July, 1977, promotion. The court then held that the burden of proof shifted to the defendant to articulate a legitimate non-discriminatory reason for his failure to promote Smith. *See, Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The district court held that the defendant had met the burden. Accordingly, the court entered judgment for the defendants since Smith did not successfully rebut the defendant's evidence.

The plaintiff subsequently appealed the decision to the Eleventh Circuit. *Smith v. State of Georgia*, 684 F.2d 729 (11th Cir. 1982). In that appeal this court affirmed part of the lower court's ruling but remanded several issues to the district court for further findings and clarification. On remand the district court was instructed to make specific findings as to the essential fact of Jenkins' motivation in choosing between the pre-adjustment and post-adjustment lists. Also, the district court was asked to clarify whether it considered evidence of past acts of retaliation against similarly situated employees as relevant in making its determination. *Id.* at 734–36.

### DISTRICT COURT'S FINDINGS ON REMAND

On remand, the district court granted plaintiff Smith's motion to supplement the record with a portion of the transcript in a July, 1978, hearing before the State Personnel Board. Using this evidence, along with the evidence of the first trial, the district court held Jenkins' motivation in using the "pre-adjustment" list instead of the "post-adjustment" list was that "Jenkins simply determined that the list which was compiled based on the agreed upon criteria was more reliable than the one in which the data had been manipulated." (District Court's Order p. 15) After making this specific finding, the court found that Jenkins' reason for not promoting Clyde Smith in July, 1977, was a legitimate, non-discriminatory reason. *See, Burdine, supra.*

In addition, the court held that the evidence of past discriminatory acts by Jenkins did not convince the court that Jenkins had discriminated against the plaintiff in this particular case. Pursuant to these findings by the district court, the plaintiff filed the present appeal.

### STANDARD OF REVIEW

In reviewing the findings of fact of the court below, this court is guided by the clearly erroneous standard of Rule 52(a). That standard is appropriately used for questions of "ultimate fact", such as discrimination or non-discrimination. *Pullman-Standard v. Swint*, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982).

### CONCLUSIONS OF LAW

The most important issue to be addressed on this appeal is whether the defendant Jenkins articulated a "legitimate, non-discriminatory" reason for selecting the list that resulted in Smith not being promoted to supervisor. As stated above, the district court applied the *Burdine* standard of shifting the burden of proof to reach its decision. The appellant contends that the district court erred in finding that the defendant had stated a non-discriminatory reason and that the court misapplied the *Burdine* standard. For the reasons to be developed below, this court does not find the appellant's arguments persuasive and therefore AFFIRMS the decision of the district court.

The facts that are presented in the present case are such that the proper analysis to be employed is the standard promulgated in *Burdine*. *Compare Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) with *Bell v. Birmingham Linen Services*, 715 F.2d 1552 (11th Cir.1983) and *Eastland v. TVA*, 704 F.2d 613 (11th Cir.1983). In *Burdine* the Supreme Court held that in a Title VII case where no direct evidence of discrimination exists against the selecting official, the standard to be employed is a shifting of the

burden of proof between the plaintiff and the defendant. *Burdine* instructs that first, the plaintiff must prove a *prima facie* case of discrimination by a preponderance of the evidence. Next, if the plaintiff meets his initial burden then the burden of proof is shifted to the defendant and the defendant must articulate a legitimate non-discriminatory reason for not selecting or promoting the aggrieved employee. Finally, if the defendant meets his burden, the burden of proof is then shifted back to the plaintiff. Now the plaintiff must prove that the defendant's reasons for not selecting or promoting the aggrieved employee are merely pretextual. *Burdine, supra,* 450 U.S. at 252–53, 101 S.Ct. at 1093–94.

In applying the facts of the instant case to the *Burdine* analysis this court is of the opinion that the defendant Jenkins did meet his burden of proof. Since it is not disputed that plaintiff Smith stated a *prima facie* case against defendant Jenkins, the burden of proof pursuant to *Burdine,* shifted to the defendant. Jenkins' burden was to articulate a legitimate non-discriminatory reason for not promoting Smith. *Burdine, supra,* at 253, 101 S.Ct. at 1093. His was a burden of production not persuasion. *Burdine, supra,* at 255, 101 S.Ct. at 1094. *Eastland, supra* at 626; *Lee v. Russell County Board of Education,* 684 F.2d 769, 773 (11th Cir.1982).

█ The testimony in the record indicates that Jenkins decided to use the pre-adjustment list on which Smith was ranked number three instead of the post-adjustment list on which Smith was ranked number two because the pre-adjustment list more accurately complied with the agreed upon criteria as established at the inception of the selection process.[4] Further, it is apparent from a reading of his testimony that Jenkins decided not to go behind Bell's interpretation of the selection procedure since Jenkins considered Bell's evaluation

fair and well reasoned. Hence, this court is convinced that Jenkins articulated a legitimate nondiscriminatory reason for his action.

The appellant argues not only was the reason stated by Jenkins not a "legitimate nondiscriminatory" reason but also that Smith should have been awarded judgment as a matter of law at the end of his *prima facie* case. In view of the above evidence, it is obvious that the appellant's first argument fails. Thus, we turn to his second argument.

█ Relying upon the authority of *Eastland, supra,* and *Bell, supra,* Smith asserts that the district court misapplied the *Burdine* analysis by requiring the defendant Jenkins to merely state and not prove his reasons for not promoting Smith. In *Bell* and *Eastland* this court recognized that the *Burdine* standard is not the only way in which to determine whether or not Title VII has been violated. Both *Bell* and *Eastland* hold that where direct evidence of discrimination against the defendant exists, then that defendant cannot rebut the plaintiff's *prima facie* case by a mere articulation of a legitimate nondiscriminatory reason for the action taken. *Bell, supra* at 1557; *Eastland, supra* at 626. *See Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Perryman v. Johnson Products Co.,* 698 F.2d 1138, 1143 (11th Cir. 1983). However, the evidence of discrimination in the present case does not approach the standard required by *Bell* or *Eastland.* Consequently, the standards of those cases are not applicable here.

Therefore, we hold that the district court properly applied the principles of *Burdine* and that the defendant Jenkins met his burden of proof by articulating a legitimate non-discriminatory reason for not promoting the plaintiff-appellant Smith.

AFFIRMED.

4. Jenkins was asked specifically why he chose one list over the other:

Q: Tell us why you selected the list which rated Jolene Green ahead of Clyde Smith rather than going by the list that rated Clyde Smith ahead of Jolene Green?

A: Well, this was a pre-agreed to criteria that well, was presented to me. We had pre - - previously agreed to this criteria and these evaluated criteria for criteria for the rankings. And, since they were previously agreed to, this is the ranking that I chose. Record 451–53.

CLARK, Circuit Judge, dissenting:

Without disagreeing with the facts, I must dissent because the majority unwittingly permits the employer to use a discriminating practice in considering employees for promotion.

All of the judges considering this case start off evenly by acknowledging that Smith was a targeted employee against whom the employer would discriminate if it could. Smith's prima facie case was made out by proving that first the employer had discriminated against women. This had been adjudicated unfavorably against the employer with Smith's assistance as a witness for the women who had been the victims of sex discrimination.

No employer likes employees who assist other employees to secure a judgment against it. This would be against human nature. The statute and judges take into account this predictable reaction. *See generally* Civil Rights Act of 1964 § 704, 42 U.S.C.A. § 2000(e)–(3) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has ... testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."); *East v. Romine Inc.*, 518 F.2d 332, 340 (5th Cir.1975) ("A person cannot be penalized for resorting to the legal procedures that Congress has established in order to right congressionally recognized wrongs."); *Pettway v. American Cast Iron Pipe Company*, 411 F.2d 998, 1004–05 (5th Cir.1969) ("There can be no doubt about the purpose of § 704(a). In unmistakable language it is to protect the employee who utilizes the tools provided by Congress to protect his rights.").

Additionally, in making out his acknowledged prima facie case of discrimination, Smith's evidence shows that he had been employed since November, 1967, that he had been refused a promotion several times since his testimony in behalf of the women employees, and that time alone made likely his moving up the ladder in view of his overall good record. With this prima facie case, the majority permits the employer to use a discriminatory practice to again pass Smith over.

The Supreme Court has stated in *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983), that:

The "factual inquiry" in a Title VII case is "whether the defendant intentionally discriminated against the plaintiff." In other words, is "the employer ... treating some people less favorably than others because of their race, color, religion, sex, or national origin."

*Id.* at 1482. In *Aikens*, Justice Blackmun in his concurring opinion indicated that the ultimate burden of persuading the court that the plaintiff has been a victim of discrimination can be met by: (1) persuading "the court that the employment decision more likely than not was motivated by a discriminatory reason"; or (2) showing "that the employer's proffered explanation is unworthy of credence." *Id.* at 1483. As noted earlier, it is clear that the plaintiff has established a prima facie case. It is less clear, in my view, that the defendant has articulated a legitimate nondiscriminatory reason for not promoting Smith. Assuming, however, that the majority is correct in concluding that the defendant advanced a legitimate nondiscriminatory reason for failing to promote the plaintiff, it is nevertheless obvious that the reason advanced was not the true reason underlying the decision not to promote Smith. Generally, "[w]here the defendant's explanation lacks credibility or where discrimination is more likely the motive, a case is made for pretext." *Clark v. Huntsville City Board of Education*, 717 F.2d 525 (11th Cir.1983). The practice here is so transparent it clearly rises to the level of a pretext.

Supervisor Bell in evaluating his four supervisees was unable or unwilling to give comparative scores on two subjects. He gave all of them the equivalency of an A. The other supervisors properly graded their supervisees with a variety of A's, B's and C's on these two subjects. Smith did not receive Bell's gratuitous boost because he was not a supervisee of Bell's.

The committee appointed to make recommendations to the employer immediately recognized the unfair result of Bell's grading method. Since it could not compare apples and oranges, it made all of the applicants apples by giving those not supervised by Bell A's on the two subjects. When everyone was made even on those two subjects, Smith's eligibility for the promotion was established.

Jenkins, the department head who was the defendant in the women's discrimination action, did not promote Smith. He chose one of Bell's supervisees who was eligible instead of Smith because of the skewed result caused by Bell's default in grading his supervisees. Jenkins' decision was subjective, illogical, and unfair. The committee, as would anyone, recognized that Bell's weighted evaluation automatically handicapped competing supervisees.[1]

In *Milton v. Weinberger*, 696 F.2d 94 (D.C.Cir.1982), the court recognized that "an 'extremely strong' prima facie case may lend special probative force to a claim of pretext. Indeed, an especially strong prima facie case combined with a relatively weak rebuttal by the defendant may entirely obviate any need for further inquiry into pretext." *Id.* at 100 n. 17. And, in *Grano v. Dept. of Development*, 699 F.2d 836 (6th Cir.1983), it was noted that the "legitimacy of the articulated reason for the employment decision is subject to particularly close scrutiny where the evaluation is subjective .... The ultimate issue in each case is whether the subjective criteria were used to disguise discriminatory action." *Id.* In *Hogan v. Pierce*, 31 FEP 115 (D.C. Cir.1983), the court stated that the "fact of

discrimination is usually not established by direct evidence, such as the admissions of selecting officials. Rather, it can be inferred from objective facts and the circumstances surrounding the employment decision." *Id.* at 124.

In trying to evaluate a subjective decision, one tries to determine how a theoretically unbiased person would objectively and logically make a decision. Since Jenkins elected to adopt the unfair illogical method of comparing the competing employees, thus frustrating Smith's promotion, it is clear to me that this subjective decision was a mere pretext to disguise discriminatory action. Thus, I would reverse and remand for entry of judgment for Smith.

---

**1.** Even Jenkins at one point seemed to recognize the unfairness of this system:

> Q. Other supervisors have fully evaluated, fully ranked people numerically on those two criteria that the one supervisor has not done but rather has just awarded full points.
> Now, my question is, do you think that it's fair to allow that ranking to stand. In other words, have that one supervisor give his candidates full points on two criteria whether [sic] than to rate them on it while the other people have not been so treated by their supervisors? [or] is a fairer treatment to in the

process simply with respect to those two criterias give every one full points just as the one supervisor had done?
> A. Well, I think you ought to apply the same rules. I — I would think that if one supervisor was giving his people full credit and the other people were ranking them down, that it might be, you know, at least, probably, ought to consider giving everybody full credit on those two points ....

*Smith v. Georgia*, No. C79–1078A, slip op. at 12–13 (N.D.Ga. Sept. 23, 1983).